UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| OPAL RUN, LLC,<br><br>    Plaintiff,<br><br>    *v.*<br><br>C&A MARKETING, INC.,<br><br>    Defendant. | Case No. 2:16-cv-24<br><br>Lead Case |
| OVERNIGHTPRINTS, INC. | Case No. 2:15-cv-2041 |

**DEFENDANT OVERNIGHTPRINTS, INC.'S MOTION TO STRIKE
EXPERT REPORTS OF LOFTSGARD AND KHOURY**

Opal Run, recognizing that its case is fatally flawed but refusing to allow ONP to pursue a finding of exceptional case, has decided to instead change its infringement theory at the last minute. Opal Run's expert report on infringement contains a completely different theory of infringement than Opal Run had previously disclosed in its infringement contentions. This substitution renders pointless the claim construction proceedings in this case by raising new claim construction issues and infringement disputes. Then, in a fashion commensurate with Opal Run's conduct in this litigation to date, Opal Run's expert report on damages was untimely served, even after it received an extension of the original deadline.

Opal Run has abused this Court's rules and ONP's professional courtesy to unduly prejudice ONP. Both of its violations should be sanctioned. Therefore, to avoid undue prejudice to ONP, ONP respectfully asks this Court to strike both expert reports in their entireties.

I. BACKGROUND

Opal Run sued ONP for allegedly infringing U.S. Patent No. 6,704,120 ("'120 Patent"). The '120 Patent relates "to a product template for a personalized print product, where the product template incorporates an image processing operation for a scanned image." '120 Patent at 1:10–12. The applicant identified a "need for providing a flexible set of imaging utilities for automated enhancement of personalized printed products, where the set of imaging utilities can be regularly updated and available to customers in preparing personalized printed products." *Id.* at 4:8–12. To that end, the patented invention "allows an image processing operation to be defined, accessed, and

2

used independently from a software application that controls how a personalized printed product is created using the image processing operation." *Id.* at 4:48–52.

Opal Run served its infringement contentions on ONP on April 18, 2016. *See* Ex. A (Prelim. ICs). Opal Run alleged that ONP infringes claim 10 the '120 Patent because it provides its customers with the ability to create personalized calendars via its website. *Id.* Claim 10 of the patent recites:

> A method for defining a personalized printed product using a data template that consists of at least one graphical component, said method comprising:
>> generating a data template that identifies the graphical component;
>>
>> encoding, in said data template, an instruction to operate upon the graphical component; and
>>
>> providing an application program on a computer, said application program configured to interpret said data template and to operate upon the graphical component in accordance with said instruction encoded in said data template.

Specifically, Opal Run alleged that the claimed "data template" is Hypertext Markup Language (HTML) code defining a calendar preview portion of a webpage. Prelim. ICs at A1–A3. It also alleged that the "graphical component" is an image (*e.g.*, a photograph) uploaded by the user, and the "instruction" is an HTML code defining the size of the user image as shown in the calendar preview. *Id.* at A3–A4.

The Court held a claim construction hearing on January 5, 2017. At the hearing, the parties agreed to the Court's preliminary constructions, most of which closely resembled ONP's proposed constructions. The Court issued an order entering the constructions on January 31. *See* Dkt. No. 107 (Claim Constr. Order).

On January 23, after ONP informed Opal Run that its infringement contentions were deficient in light of the agreed constructions, Opal Run served supplemental infringement contentions on ONP. *See* Ex. B (Supp. ICs). These contentions were still deficient, but at least remained unchanged in their identification of elements from the accused portion of ONP's website that enables creation of a personalized calendar.

Opening expert reports were due on February 13, and fact discovery closed the same day. Opal Run served an expert report on infringement at 6:08 p.m. CT on February 13. *See* Ex. C (Feb. 13 Email fr Bailey to Bonilla). Opal Run requested and received a one-day extension of the deadline to serve its expert report on damages, until 5:00 p.m. CT on February 14. Opal Run missed that deadline, too. It served an expert report on damages at 12:54 a.m. CT on February 15. *See* Ex. D (Feb. 15 Email fr Bailey to Bonilla). The damages report was late even after ONP granted extra time. The infringement report, as explained below, bore no relationship to Opal Run's infringement contentions.

## II.   LEGAL STANDARD

"Expert infringement reports may not introduce theories not previously set forth in infringement contentions." *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F.Supp.3d 690, 699 (E.D. Tex. 2014). Patent Rule 3-1 requires a party asserting patent infringement to serve infringement contentions on each defending party. "The local patent rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 822 (E.D. Tex. 2007). Thus, "infringement contentions must be

4

reasonably precise and detailed based on all publicly available information in order to provide a defendant with adequate notice of the plaintiff's theories of infringement." *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009). "This notice focuses discovery and narrows issues for claim construction, summary judgment, and trial." *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010) (citing *Connectel, LLC v. Cisco Sys., Inc.*, 391 F.Supp.2d 526, 526 (E.D. Tex. 2005)). The Docket Control Orders in this case set a deadline for Opal Run to comply with Patent Rule 3-1.

A court may impose any "just" sanction for the failure to obey a scheduling order, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses." Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2)(A)(ii); *see O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006); *see also Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-cv-158, 2008 WL 7180756, at *2 (E.D. Tex. May 1, 2008). Thus, a court may strike an expert report that asserts a previously-undisclosed theory of infringement. *Cf. Anascape*, 2008 WL 7180756 at *4 (striking portions of expert report that exceeded scope of invalidity contentions); *Visto Corp. v. Seven Networks, Inc.*, 2006 WL 5153146, at *1 (E.D. Tex. Mar. 27, 2007) (striking portions of expert report that relied on prior art not disclosed in invalidity contentions). A court may likewise strike an expert report that was served late. *See O2 Micro*, 467 F.3d at 1368 (affirming district court's decision to exclude expert report supplement "because of the failure to comply with the disclosure deadlines required by the local patent rules and the case management order").

### III. ARGUMENT

Opal Run's attempt to assert an entirely new theory of infringement, at this stage of the case, constitutes "litigation by ambush." *Computer Acceleration*, 503 F.Supp.2d at 822. Per the Docket Control Orders in this case (Dkt. Nos. 73, 104), Opal Run was required to provide detailed infringement contentions "based on all publicly available information." *Realtime Data*, 2009 WL 2590101 at *5. Pursuant to Patent Rule 3-6, Opal Run may not amend those contentions without leave of Court entered upon a showing of good cause. ONP's website, and the corresponding *publicly-available* code, are the *only* evidence on which both Opal Run's infringement contentions and its expert report on infringement rely. Opal Run thus cannot contend that its theory of infringement changed as a result of discovery—in fact, Opal Run did not review any of the documents and private source code that ONP offered to make available to it. **It has taken no discovery**. There is no reason, therefore, that ONP could not have disclosed its new theory of infringement in its infringement contentions. Thus, had ONP sought the Court's leave to amend its infringement contentions, it could not have shown good cause for doing so.

Instead of seeking leave to amend, however, Opal Run served an expert report on infringement contending that entirely different features, from a previously-unmentioned area of ONP's website, allegedly meet various elements of asserted claim 10. Through this report, Opal Run attempts to circumvent the Local Patent Rules and the Court's Docket Control Orders to improperly amend its infringement contentions, replace its infringement theory, and severely prejudice ONP. Opal Run's new theory of infringement has its own new defects, but ONP would nevertheless be prejudiced if it

6

had to defend against the new allegations, which it did not have an opportunity to explore through discovery or address through claim construction. ONP therefore moves the Court to strike Opal Run's expert report on infringement in its entirety.

In addition, Opal Run served its expert report on damages late even after ONP granted it additional time. Opal Run has not offered any excuse for its late service. ONP therefore moves the Court to also strike Opal Run's expert report on damages.

### A. Loftsgard's Expert Report on Infringement

Opal Run's expert report on infringement asserts an entirely new theory of infringement not previously disclosed by Opal Run. Even the portion of ONP's website it alleges infringes claim 10 is different. Opal Run's infringement contentions identify features from an area of ONP's website that allows one to create a personalized calendar. *See* Prelim. ICs (*passim*); Supp. ICs (*passim*). Its expert report, on the other hand, points to features in an area of ONP's website dedicated to business cards. *See* Ex. E (Loftsgard Report) at 7–12. These are two distinct sections of ONP's website with different user interfaces, plug-ins, methods for exchanging data, etc. Consequently, Opal Run's expert report asserts that various claim limitations are met by entirely new and different features of ONP's website than what Opal Run previously disclosed. Had Opal Run timely disclosed this theory, the parties likely would not have agreed about how to construe claim 10 and ONP would have sought to construe additional terms, including "graphical component."

1.  *Data template*

The Court has construed "data template" to mean "structured data format for representing the composition of a personalized printed product as a layout comprising graphical components." Dkt. No. 107 at 12.

In its infringement contentions, Opal Run asserts that the claimed "data template" is "a template for calendar creation written in a markup language." Prelim. ICs at A1; Supp. ICs at A1. Specifically, Opal Run points to a portion of a webpage on ONP's site depicting a calendar preview within a "Your Calendar Design Workspace" and the corresponding HTML code. *See* Prelim. ICs at A1–A3; Supp. ICs at A1–A3.



Supp. ICs at A2.

Opal Run's expert report on infringement asserts, for the first time, that the "data template" ONP allegedly generates pertains not to calendars but to business cards. Loftsgard Report at 13–14. Further, the alleged template is not a portion of a webpage's

8

HTML code, but rather an Extensible Markup Language (XML) file separate from any ONP webpage. *Id*. This difference results in changes to how the report alleges other elements of claim 10 are met as well. For example, according to the report, "said application program configured to interpret said data template" is met because a "parseXML function is called to interpret the XML business card template." *Id*. at 20. Opal Run had never mentioned a parseXML function before. Having failed to previously allege that the "data template" is anything other than the calendar preview portion of a webpage on ONP's site, Opal Run cannot now assert that the "data template" is an XML file for a business card that is separate from any ONP webpage.

2.  *Graphical component*

In its infringement contentions, Opal Run asserts that the claimed "graphical component" is an image (*e.g.*, a photograph) uploaded by the user. *See* Prelim. ICs at A3; Supp. ICs at A2–A3.



Supp. ICs at A3.



Supp. ICs at A6.

Opal Run's expert report on infringement asserts, for the first time, that the relevant "graphical component"—the one that is altered by way of an instruction encoded in the template—is not an image provided by the user, but rather an image that is inherent to the template. In the example the report uses, the "graphical component" is a background image comprising a pattern of green heptagrams. This represents an about face regarding the graphical component. Rather than being a user-supplied image uploaded to ONP, Opal Run now contends the graphical component can be an image supplied by ONP in some of its printed product options.

Had ONP known that Opal Run might allege that the "graphical component" is a *built-in* image, it would have sought to construe that term. According to the '120 Patent, a primary purpose of the alleged invention is to provide an image processing operation for automatically conforming a *user-supplied* image to the design of a template, because end users typically lack the skills to do so themselves. '120 Patent at 3:13–16. It is not

necessary to automatically conform an image that is inherent to a template (*e.g.*, a background image) because such images have already been manually adapted by a skilled template designer. The '120 Patent's specification makes clear that the template specifies an image processing operation for a *user-supplied* image:

- "*This invention* relates generally to apparatus [*sic*] for creation and printing of a personalized print product and more particularly to a product template for a personalized print product, *where the product template incorporates an image processing operation for a scanned image*." '120 Patent at 1:8–12 (Field of Invention).
- "*When incorporating a customer image into a greeting card, invitation, or similar personalized printed product*, accurate emulation of a photograph may not suit the design intent of the card. Instead of the realistic treatment of an image provided by a photograph, *a greeting card designer may want to present an 'artistic' treatment of a customer image*." *Id*. at 2:51–57.
- "It can be readily seen that *this invention* allows a designer of a greeting card, for example, to specify a [sic] image processing operation that is optimal for integrating customer images in a design, to provide an aesthetically pleasing printed output." *Id*. at 8:55–59.

*See GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370–1371 (Fed. Cir. 2016) ("[W]hen a patent 'repeatedly and consistently' characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization."; "When a patent describes the features of the 'present invention' as a whole, this description limits the scope of the invention.").

Thus, Opal Run's assertion of a new theory of infringement, via its expert report, not only violates this Court's rules and orders, but also unduly prejudices ONP at least because ONP would have made different claim construction arguments had Opal Run disclosed the theory in its infringement contentions. There is no excuse for Opal Run's failure to disclose its new theory before; all of the evidence on which its expert report

relies is publicly-available. Having failed to previously allege that the "graphical component" is anything other than a user-supplied image, Opal Run cannot now assert that the "graphical component" is an image inherent to a template.

       3.    *Instruction*

The Court has construed "instruction" to mean one of: "(1) an identification of an image-processing program separate from the application program, (2) image-processing source code, or (3) image-processing executable code." Dkt. No. 107 at 19.

In its infringement contentions, Opal Run asserts that the claimed "instruction" is "a markup language code." Specifically, Opal Run points to three lines of HTML code in ONP's webpages, which it asserts are "source code" for "changing image compression format, changing image size and removing image [sic] from the template." Supp. ICs at A6, A4; *see also* Prelim. ICs at A4.



Supp. ICs at A4.



Supp. ICs at A6.



Supp. ICs at A6.

Opal Run's expert report on infringement asserts, for the first time, that the "instruction" identifies an alleged separate image-processing program called "KRE8-3D" ("create 3D") that is part of the "DaVinci" module published by third-party Opensoft,


Inc. Loftsgard Report at 15. ***Opal Run had never mentioned KRE8-3D, DaVinci, or Opensoft before.*** According to the report, "[t]he identified 'KRE8-3d' (i.e., 'create 3D') image processing program alters the appearance of one of the graphical components such that it appears to have depth." *Id*. at 16. Having failed to previously allege that the "instruction" is anything other than source code for reformatting, resizing, or removing a user image, Opal Run cannot now assert that the "instruction" identifies a separate image-processing program for making the image appear to have depth.

        4.     *Providing an application program on a computer, said application program configured to . . . operate upon the graphical component*

Finally, Opal Run's expert report on infringement discloses a new manner in which the alleged "application program" is supposedly "configured to . . . operate upon the graphical component." Both Opal Run's infringement contentions and its expert report assert that the claimed "application program" is a web application. Supp. ICs at 7; Loftsgard Report at 19. As the expert report explains, "[w]eb applications typically consist of an interactive client portion which typically executes within a web browser, and a server portion." Loftsgard Report at 7. But the contentions and report differ greatly in how this "application program" is alleged to operate.

In its infringement contentions, Opal Run asserts that the "the web application is hosted on Defendant's server and executed on a customer computer." Supp. ICs at 7. Specifically, the client portion of ONP's web application is alleged to include HTML code that the user's web browser supposedly executes in response to the user uploading or

removing an image. Supp. ICs at A7–A10. Typically, a web browser is responsible for parsing and interpreting HTML instructions such as this.

Because Opal Run's expert report on infringement asserts, for the first time, that the instruction is actually XML interpreted by a JavaScript library, rather than HTML interpreted by the web browser, it now argues that a "host application" operates on the graphical components. Lofstgard Report at 21. The host application allegedly invokes "the third-party WebGL viewer—a component of the DaVinci module—to render the appropriate layers with depth." *Id*. at 21. ***Opal Run never before disclosed a "host application" invoking a third party module by interpreting XML.*** Had ONP known that Opal Run intended to construe "application program" this way, it would have sought to construe the term. The '120 Patent clearly uses the term to refer to a software program, residing on the client, that cannot be frequently updated—unlike a JavaScript module that is provided to the client with every visit to a web page. *See* '120 Patent at 3:33–41. Having failed to previously allege that the server portion of ONP's web application is allegedly responsible for performing the image operation, Opal Run cannot now assert that a host application is "configured to . . . operate upon the graphical component."

### B. Khoury's Expert Report on Damages

Opening Expert Reports were due on February 13, 2017. *See* Dkt. No. 104 (DCO). Local Rule CV-5(d) provides:

> Parties may serve copies of pleadings and other case related documents to other parties by facsimile or electronic means in lieu of service and notice by mail. Such service is deemed complete upon sending. Service after 5:00 p.m. Central Time shall be deemed served on the following day.

At 9:32 p.m. CT on February 13, Opal Run asked ONP for a one-day extension to provide its expert report on damages. *See* Ex. F (Feb. 13, 2017 Emails between Bailey and Bonilla). ONP responded that the report was already late, but agreed to let Opal Run serve it before 5:00 p.m. CT on February 14. *See id*. Opal Run agreed to serve the report by 5:00 p.m. the next day, but—without further warning—did not serve its report until 12:54 a.m. on February 15. *See id.*; *see also* Ex. D. Opal Run has not offered any excuse for its untimely service. ONP therefore moves the Court to strike Opal Run's expert report on damages in its entirety. *See O2 Micro*, 467 F.3d at 1368 (affirming district court's decision to exclude expert report supplement "because of the failure to comply with the disclosure deadlines required by the local patent rules and the case management order").

## IV. CONCLUSION

For the above reasons, ONP moves the Court to strike Opal Run's expert report on infringement and its expert report on damages in their entireties.

Dated: February 24, 2017 Respectfully submitted,

By: */s/ Neil J. McNabnay*
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Ricardo J. Bonilla
rbonilla@fr.com
Texas Bar No. 24082704
Vasiliy Mayer
mayer@fr.com
Texas Bar No. 24099901

**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

*Counsel for Defendant OvernightPrints, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 24, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Vasiliy Mayer*
Vasiliy Mayer

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that Ricardo Bonilla, counsel for Defendant OvernightPrints, Inc., conferred telephonically with Brian Andrade and David Bailey, counsel for Plaintiff Opal Run, LLC, on February 17, 2017, and Plaintiff is opposed to the relief sought herein.

*/s/ David B. Conrad*
David B. Conrad