**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **OPAL RUN, LLC,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**C & A MARKETING, INC.,**<br><br>　　　　　Defendant. | **Case No. 2:16-cv-00024-JRG-RSP**<br><br>**PATENT CASE**<br><br>**JURY TRIAL DEMANDED**<br><br>**LEAD CASE** |
| **OPAL RUN LLC,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**OVERNIGHTPRINTS, INC.**<br><br>　　　　　Defendant. | **Case No. 2:15-cv-2041-JRG-RSP**<br><br>**PATENT CASE**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF OPAL RUN, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT OVERNIGHTPRINTS, INC.'S MOTION TO STRIKE <u>EXPERT REPORTS OF LOFTSGARD AND KHOURY</u>**

Plaintiff Opal Run, LLC ("Opal Run") responds to Defendant OvernightPrints, Inc.'s ("ONP") Motion to Strike Expert Reports of Loftsgard and Khoury [Dkt. 113] (the "Motion") and requests this Court to deny ONP's Motion. The Loftsgard Report pertains to ONP's infringement of U.S. Patent No. 6,704,120 (the "'120 Patent") and the Khoury Report pertains to Opal Run's reasonable royalty damages. The Loftsgard Report, contrary to ONP's contention, does not disclose a new theory of infringement; rather, it provides a more technically detailed explanation of ONP's infringement of the '120 Patent. Opal Run acknowledges it experienced challenges with

1

respect to the timeliness of the Khoury Report, but argues the four factors governing modification to the case deadlines support a ruling to allow the Khoury Report to stand.

I.    **LEGAL STANDARDS**

    A.  **Pertaining to Mr. Loftsgard's Infringement Report**

"Although '[e]xpert infringement reports may not introduce theories not previously set forth in infringement contentions[,] ... [t]he scope of infringement contentions and expert reports are not, however, coextensive.'" *Core Wireless Licensing, S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 3655302, at *4 (E.D. Tex. Mar. 21, 2016) (quoting *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, 2010 U.S. Dist. LEXIS 17536 at *6–7 (E.D. Tex. Feb. 26, 2010)). Moreover, when a defendant's website is accused of infringement, this Court has recognized that a "website is not a static object that can only function in one manner, rather it is dynamic and interactive. There are innumerable paths a user can take to get from one page to another. In dealing with something like a website, it would be unrealistic to expect plaintiffs to provide screen shots for every possible manifestation of the alleged infringement." *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006).

In this case, Mr. Loftsgard's report is well within the infringement theory Opal Run disclosed to ONP and, therefore, the Loftsgard Report should not be stricken.

    B.  **Pertaining to Dr. Khoury's Damages Analysis Report**

Federal Rule of Civil Procedure 16 governs the modification of a case schedule once it has been established. *See* Fed. R. Civ. P. 16(b); *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."). The four factors to consider when determining good cause are

"(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990)); *see also S&W Enters.*, 315 F.3d at 536 (same).[1]

In this case, the factors weigh in Opal Run's favor, and, thus, the Khoury Report should not be stricken.

## II. THE LOFTSGARD INFRINGEMENT REPORT

### A. The Loftsgard Report Does Not Introduce a New Infringement Theory

Opal Run served its infringement contentions on ONP on April 18, 2016, in accordance with the local rules and scheduling orders issued by the Court. *See* Dkt. 11; Motion Ex. A (Prelim. ICs). In response to ONP's request for supplemental infringement contentions after the Court's claim construction hearing, Opal Run served ONP with its supplemental infringement contentions on January 23, 2017. *See* Motion Ex. B (Supp. ICs).

In each of its infringement and supplemental infringement contentions, Opal Run disclosed an infringement theory that ONP's website (i.e., www.overnightprints.com) infringes the '120 Patent, e.g., through its use of data templates—written in markup language—for the creation of personalized printed products. *See* Prelim. ICs; Supp. ICs. Consistent with its infringement contentions, the Loftsgard Report demonstrates how ONP's website (i.e.,

---

[1] ONP relies on *O2 Micro Intern. Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355 (Fed. Cir. 2006), to support its arguments with respect to the Khoury Report. *See* Motion at 15-16. The portion of *O2 Micro* ONP relies on is based on Ninth Circuit law. *See O2 Micro*, 467 F.3d at 1368. The Fifth Circuit is the proper case law under which the Motion should be determined when not dealing with substantive patent law or local patent rules. *See id.* at 1364. That is the case here, i.e., case schedules and expert disclosures are procedural and the "law of the regional circuit" applies. *Id.*

www.overnightprints.com) infringes the '120 Patent, e.g., through its use of data templates—written in markup language—for the creation of personalized printed products. *See, generally*, Loftsgard Report.

In its infringement contentions, Opal Run identified "Defendant's website" as the "Accused Instrumentality" as required by P.R. 3-1(b). *See* Prelim. ICs at 2; Supp. ICs at 2. In its demonstrative charts attached to its preliminary and supplemental infringement contentions, Opal Run used ONP's calendar product as an example of how ONP's website infringes the '120 Patent. With numerous supporting references to ONP's website, Opal Run stated:

> OvernightPrints, Inc. ("Defendant") employs a method for defining a personalized printed product (*e.g.*, a calendar with a photograph) using a data template (*e.g.*, a template for calendar creation written in a markup language) that consists of at least one graphical component (*e.g.*, photograph), said method comprising:

*See* Prelim. ICs at A1; Supp. ICs at A1.

Opal Run never limited ONP's calendar product to be its only infringing example. Moreover, Opal Run never limited ONP's calendar product to be the Accused Instrumentality. To the contrary, Opal Run clearly stated that ONP's website is the Accused Instrumentality, and explicitly used as an example ONP's calendar product, to illustrate how ONP's website infringes the '120 Patent. *See* Prelim. ICs at 2, A1; Supp. ICs at 2, A1.

Just as ONP's calendar product provides an example of how ONP's website infringes the '120 Patent, Mr. Loftsgard used ONP's business card products as another, more technically detailed example of how ONP's accused website infringes the '120 Patent.

Mr. Loftsgard's use of ONP's business card products to illustrate ONP's infringement is not a new infringement theory, but provides another example of how ONP's website infringes the '120 Patent. ONP's website lists numerous examples of personalized printed products. As shown

below, ONP's website (i.e., overnightprints.com) lists "Calendars" and "Business Cards" as examples of its "Print Products":

| MARKETING SERVICES | EDDM | MAILING SERVICES | | OVERNIGHT PRINTS |
|---|---|---|---|---|
| **All Products** | Business Cards | Postcards | Flyers | |
| **Print Products** | **Products** | **Products** | **Products** | |
| Address Labels | Circle Business Cards | Letterhead | Pocket Folders | |
| Announcements | Coasters | Mailers | Presentation Folders | |
| Booklets | Euro Business Cards | Magnets | Rack Cards | |
| Bookmarks | Envelopes | Mini Business Cards | Sandwich Business Cards | |
| Brochures | Fat Business Cards | Notecards | Square Business Cards | |
| **Business Cards** | Flyers | Notepads | Self-Inking Stamps | |
| **Calendars** | Greeting Cards | Postcards | Ultra Thick Business Cards | |
| Car Door Magnets | Invitations | Posters | Wrapping Paper | |

*See* OvernightPrints, Inc., "Overnight Prints for all your Online Printing needs, Business Cards and more," *available at* https://www.overnightprints.com (last retrieved March 13, 2017). Opal Run's infringement contentions and the Loftsgard Report both provide examples for ONP's infringing methodology.

Mr. Loftsgard's use of ONP's business cards product is also consistent with the teachings of the '120 Patent specification. The '120 Patent specification provides numerous examples of printed products, including "calendars" and "business materials," for example:

> The generic term "personalized printed product" . . . is used to encompass the output of a system designed to produce *any of a number of types of printed output products* such as the following: Greeting cards; Invitations; *Calendars*; Announcements; *Business materials* (for example, sales sheets, real estate brochures, and the like).

'120 Patent at 4:58-5:2.

Opal Run's infringement contentions and the Loftsgard Report set forth a consistent infringement theory: ONP's website generates data templates in markup languages that include instructions for operating on graphical components. To demonstrate, as examples of, how ONP's

website infringes the '120 Patent, Opal Run and Mr. Loftsgard both draw from ONP's own "Print Products" offering, which are each consistent with the teachings of the '120 Patent and Opal Run's infringement theory.

### B. OvernightPrints's Claim Construction Arguments are a Red Herring

ONP claims prejudice with respect to claim construction, apparently, because it did not grasp the scope of Opal Run's infringement theory. And it complains about the constructions of four terms and phrases: "data template," "graphical component," "instruction," and "providing an application program on a computer, said application program configured to . . . operate upon the graphical component." Motion at 7-14. First, Opal Run's infringement theory is consistent throughout its infringement contentions and the Loftsgard Report. Second, ONP is not prejudiced by the claim constructions.

1. *"data template"*

In its Motion, ONP makes the following erroneous statement, quoting in part Opal Run's infringement contentions: "In its infringement contentions, Opal Run asserts that the claimed 'data template' is 'a template for calendar creation written in a markup language.'" Motion at 8. This quote is deceptively incomplete; the complete passage in Opal Run's infringement contentions reads:

> OvernightPrints, Inc. ("Defendant") employs a method for defining a personalized printed product (*e.g.*, a calendar with a photograph) using a data template (*e.g.*, a template for calendar creation written in a markup language) that consists of at least one graphical component (*e.g.*, photograph), said method comprising:

*See* Prelim. ICs at A1; Supp. ICs at A1. Opal Run's infringement contentions unambiguously identify the calendar template *as an example*. *See id.* ONP's assertion inaccurately claims that Opal Run limited its infringement contentions to ONP's calendar product when it clearly did not. *See* Motion at 8; Prelim. ICs at A1; Supp. ICs at A1.

ONP then incorrectly claims that the Loftsgard Report cites XML code templates "separate from any ONP webpage." Motion at 9. The Loftsgard Report expressly states the XML data templates discussed within the report were *from ONP's website*. *See, e.g.*, Loftsgard Report at 10 ("An exemplar XML data template used by overnightprints.com is below."); *see also id.* at 5 (defining the functionality of the accused website, i.e., overnightprints.com, as the "Web Application"). Note also that the scope of materials reviewed to form the basis of Mr. Loftsgard's report and opinions were (1) the '120 Patent, (2) the claim construction order, (3) Opal Run's supplemental infringement contentions, and (4) ONP's website. *See id.* at 5. The XML data template ONP complains of came from the ONP website, despite its assertion to the contrary. And because these files are integrated in ONP's website, they are within the scope of the Accused Instrumentality. *See Orion IP*, 407 F. Supp. 2d at 818.

Opal Run never limited its infringement contentions specifically to HTML, rather the infringement contentions are directed toward "markup languages." Opal Run disclosed to ONP that it infringed the '120 Patent through its use of data templates "written in markup language." Both HTML (HyperText Markup Language) and XML (eXtensible Markup Language) are markup languages.

As noted above, Opal Run never limited its theory or infringement allegations to HTML or to ONP's calendar product. And the "Accused Instrumentalities" in Opal Run's infringement contentions include its entire website. *See* Prelim. ICs at 2; Supp. ICs at 2. Thus, ONP cannot claim prejudice with respect to this term.

    2. *"graphical component"*

ONP's argument that the "graphical component" must be a "user-supplied" image is unfounded. As noted by this Court in the Claim Construction Order, the '120 Patent itself defines the term "graphical component":

> The generic term "graphical component" generally refers to *any graphical object* that is incorporated in the layout of a personalized printed product. Graphical components can include such objects as text strings, scanned images provided by a customer, *or "canned" graphics such as borders and backgrounds, as well as clip art, syndicated cartoon characters, and the like*.

'120 Patent at 5:6-12 (emphasis added); *see also* Claim Construction Order at 14 (describing the foregoing passage as the "expressly provid[ed]" definition for "graphical component"). ONP's claim the '120 Patent *requires* a user-supplied image is baseless.

Moreover, whether the graphical component is user-supplied or built-in is irrelevant to Claim 10. The patented method requires identifying the graphical component and operating upon it. Whether the graphical component was an image scanned by a user or a "canned" graphic has no bearing on the steps performed in Claim 10. ONP is incorrect in trying to limit the graphical component to a user-supplied image, and the source of the image is outside the scope of the method clearly disclosed in Claim 10. Thus, ONP cannot claim any prejudice with respect to this term.

### 3. *"instruction"*

The Court construed "an instruction" to mean "(1) an identification of an image-processing program separate from the application program, (2) image-processing source code, or (3) image-processing executable code." Claim Construction Order at 19. ONP claims "instruction" means "one of" the foregoing three possibilities. *See* Motion at 12. That is not the case. Clearly, the disjunction in the construction does not mean that "instruction" must mean "image-processing executable code," and can never mean "image-processing source code" or code that identifies "an image processing program separate from the application program." ONP's argument defies basic

logic. Given the construction, the "instruction" limitation disclosed in Claim 10 could be satisfied by any one of the three options, or any combination thereof.

Both Opal Run's infringement contentions and the Loftsgard Report identify "an instruction" in the markup code. Opal Run's infringement contentions describe an example using at least an "image-processing source code" and the Loftsgard Report identifies an example using at least "an image-processing program separate from the application program." Both examples are expressly within the construction provided by the Court.

ONP further takes issue with the Loftsgard Report's reference to KRE8-3d, DaVinci, and Opensoft. *See* Motion at 14. But Opal Run accused ONP's website, and these applications are on and, therefore, an integral part of ONP's website (e.g., downloaded and/or invoked by the website) —specifically at the domain overnightprints.com—and, therefore, within the scope of the Accused Instrumentality. *See Orion IP*, 407 F. Supp. 2d at 818. The Loftsgard Report is intended to provide a more detailed technical explanation of ONP's infringement. The Loftsgard Report references to KRE8-3d, DaVinci, and Opensoft provide just that—a more detailed explanation of ONP's infringement.

> 4. *"providing an application program on a computer, said application program configured to . . . operate upon the graphical component"*

ONP attempts to manufacture a distinction between Opal Run's infringement contentions and the Loftsgard Report that does not exist. *See* Motion at 14-15. ONP argued, "[b]ecause Opal Run's expert report on infringement asserts, for the first time, that the instruction is actually XML interpreted by a JavaScript library, rather than HTML interpreted by the web browser, it now argues that a 'host application' operates on the graphical components."

The Loftsgard Report never drew such a distinction between a web browser and a JavaScript library. Below is an excerpt from the Loftsgard Report:

9

> *As an example*, a Web Application user may create a custom business card by selecting from one of the available business card templates, presented in the *Web Application via web browser markup language and JavaScript code*, and customize it for the purpose of creating a printed product by modifying graphical components included in the template, such as setting a personalized name for a business card, or by adding additional graphical components, such as a personalized photograph.

Loftsgard Report at 7 (emphasis added).

Loftsgard never drew a distinction between markup languages interpreted by a web browser versus those interpreted with a JavaScript library. In both Opal Run's infringement contentions and the Loftsgard Report, Opal Run's infringement theory discloses that the ONP website (or server) works in tandem with a user's web browser. The Loftsgard Report demonstrates this cooperation with respect to the first option under the Court's construction of "instruction" as discussed above.

ONP also mistakenly describes the '120 Patent's treatment of the application program referenced in the first option for "instruction." In its Motion, ONP references the '120 Patent at 3:33-41 and states, "[t]he '120 Patent clearly uses the term ["application program"] to refer to a software program, residing on the client, that cannot be frequently updated—unlike a JavaScript module that is provided to the client with every visit to a web page." Motion at 15. This is a misreading of the '120 Patent, and, notably, is from the section of the specification titled "Background of the Invention," discussing prior art and the state of the art at the time of invention. *See* '120 Patent at 3:33-41.

The '120 Patent, when describing the invention, specifically describes the application program as *separate* from the data template: "It is a further advantage of the present invention that it allows an image processing operation to be defined, accessed, and used independently from a software application that controls how a personalized printed product is created using the image

processing operation." *Id.* at 4:47-52. Likewise, under the "Detailed Description of the Invention," the specification describes the separate application thusly:

> Application 60 obtains customer image 16 and determines, from instructions in product template 56, that an image processing operation is required. Fields in product template 56 can identify the location of an image processing program 80 that is accessible to the application 60 for performing the image processing operation. This location may be at a remote host 72, as illustrated in FIG. 2. In such a case, remote host 72 may download image processing program 80 to be run under the control of application 60. It should be noted that image processing program 80 need not be on a separate host computer, but could alternately be locally stored on the same computer that hosts the application 60.

*Id.* at 6:32-44; *see also* FIG. 2 (depicting same). ONP's assertion that the "application program" must be local to the client is a clear misreading of the '120 Patent. Thus, again, ONP cannot claim any prejudice with respect to this claim element.

Because the Loftsgard Report does not disclose a new infringement theory, and ONP's claim construction prejudice arguments lack merit, the Court should deny ONP's request to strike the Loftsgard Report.

### III. THE KHOURY DAMAGES REPORT

Counsel for Opal Run requested from ONP a one-day extension of time to serve its expert disclosures with respect to damages when it became apparent that the Khoury Report would not be ready to serve on ONP by midnight of February 13, 2017, the day such disclosures were due under the Docket Control Order. *See* Dkt. 104; Motion Ex. F. Unfortunately, the Khoury Report was not finalized for service on ONP until 12:54 a.m. on February 15, 2017—mere hours following Counsel's expectation to serve the Report by 5:00 p.m. on February 14, 2017. *See* Motion Exs. D & F. Opal Run acknowledges and regrets that the Khoury Report was a few hours late. In the interests of justice, however, Opal Run respectfully requests this Court to grant Opal Run leave for the tardiness of the Khoury Report. Exclusion of evidence, including expert testimony, is a

severe sanction, and under the good cause analysis applicable to modifying a case schedule, justice weighs in favor of letting the Khoury Report stand. *See, e.g.*, *Wright v. State Farm Lloyds*, 2015 WL 12915594 (E.D. Tex. Oct. 5, 2015).

### A. Opal Run's Explanation for the Delay in Serving the Khoury Report

Dr. Khoury's report with respect to Opal Run's reasonable royalty damages was served late on ONP primarily because of miscommunication between Counsel for Opal Run and Dr. Khoury in the week before the report was due. This miscommunication became apparent to Counsel on February 13, 2017. Opal Run acknowledges that this mistake falls on Plaintiff's shoulders, but argues each remaining factor—and, thus, the ultimate determination—weighs strongly in favor of not striking Dr. Khoury's Report.

### B. The Critical Importance of Dr. Khoury's Testimony

Opal Run has the burden of proving damages at trial and the testimony of Dr. Khoury is critical to Opal Run. Without expert testimony to aid the Court or Jury, especially with respect to the *Georgia-Pacific* factors, a proper determination of damages may not be resolvable. *See, e.g.*, *Unicom Monitoring, LLC v. Cencom, Inc.*, 2013 WL 1704300, at *2 (D.N.J. Apr. 19, 2013). Not all cases require expert testimony to prove damages, but when evaluating a reasonable royalty argument, an expert can be essential to the trier of fact. *Id*.

In this case, Opal Run has pleaded that its damages are a reasonable royalty and Dr. Khoury's report provides the analysis for how that reasonable royalty should be calculated. In short, Dr. Khoury's report and testimony at trial will be critical to Opal Run's case with regard to the calculation of damages if it proves ONP infringes the '120 Patent. Thus, the exclusion of Dr. Khoury's testimony would extremely prejudice Opal Run.

### C. OvernightPrints Would Not Be Prejudiced by Allowing Dr. Khoury's Testimony

Unlike Opal Run, ONP would incur no prejudice by allowing Dr. Khoury to testify. The Khoury Report was late, indeed. But only by a matter of hours. ONP still had the balance of the expert discovery period to review the Khoury Report and depose Dr. Khoury.

As a matter of happenstance, the parties moved for and the Court granted a two-day extension of time to file rebuttal expert reports. Thus, while it was not disclosed to Opal Run as a factor in ONP's agreement to extend the rebuttal response deadline, ONP had the same amount of time originally contemplated under the DCO for its rebuttal report, if it wanted to serve one. It did not serve a rebuttal report to Dr. Khoury's report, but had sufficient time to do so.

### D. No Continuance is Necessary because OvernightPrints was not Prejudiced; and There Is Sufficient Time for a Continuance if it were Necessary

As mentioned above, the parties to this case moved for and the Court granted a two-day extension for service of rebuttal expert reports. This provided ONP with the same amount of time it originally had under the DCO to serve a rebuttal report to the Khoury Report. ONP's choice not to rebut the Khoury report indicates it sustained no prejudice by the delay in receiving it. ONP still has the remaining balance of the expert discovery period to depose Dr. Khoury if it wishes.

Additionally, if a continuance or rescheduling of deadlines were required to cure any prejudice to ONP, there remains ample time for such an occurrence. Jury selection is four months away, giving ONP sufficient time if it needed any.

### IV. CONCLUSION

Excluding evidence, including expert testimony, is an extreme sanction and neither of Opal Run's experts should be prevented from testifying, which would result if their reports were to be stricken. Mr. Loftsgard's infringement analysis is within the scope of the infringement theory proffered by Opal Run since the beginning of this case. If ONP was unclear on the scope of Opal Run's infringement accusations, it should have raised the issue months ago. "The Patent Rules

intend to strike a balance of providing fair notice to defendants without requiring unrealistic, overly factual contentions from plaintiffs, but the burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword." *Orion IP*, 407 F. Supp. 2d at 818. This Court's Patent Rules require early disclosure of Opal Run's infringement theory, but not the entirety of the evidence required to prove its case. Mr. Loftsgard's report provides a more technical analysis of ONP's website and its infringing methodology, and ONP's claim-construction-based arguments are but red herrings. Accordingly, the Court should deny ONP's request to strike the Loftsgard Report.

Likewise, the Court should deny ONP's request to strike Dr. Khoury's report on the reasonable royalty damages for the '120 Patent. While Opal Run concedes the report was served on ONP late, ONP will suffer no prejudice if the Khoury Report stands. Opal Run, however, would sustain significant prejudice without Dr. Khoury's testimony. Finally, while a continuance is unnecessary to cure any prejudice to ONP, if the Court were to find any, there is ample time for any such relief.

For the foregoing reasons, Opal Run respectfully requests this Court to deny ONP's Motion to Strike Expert Reports of Loftsgard and Khoury.

Date: March 13, 2017                              Respectfully submitted,

                                                   /s/ *David A. Bailey*
                                                  Brian M. Andrade
                                                  State Bar of Texas No. 24078150
                                                  David A. Bailey
                                                  State Bar of Texas No. 24078177
                                                  **ANDRADE LAW FIRM, PLLC**
                                                  17330 Preston Road, Ste 200D
                                                  Dallas, Texas 75252
                                                  P: (972) 372-4926
                                                  F: (972) 372-0340
                                                  E: brian@dfw-lawyer.com

14

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 13, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

      /s/ *David A. Bailey*
     David A. Bailey