**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **OPAL RUN, LLC,**  Plaintiff,  *v.*  **C&A MARKETING, INC.,**  Defendant. | **Case No. 2:16-cv-00024-JRG-RSP**  **LEAD CASE** |
| **OVERNIGHTPRINTS, INC.** | **Case No. 2:15-cv-2041** |

**DEFENDANT OVERNIGHTPRINTS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE EXPERT REPORTS OF LOFTSGARD AND KHOURY**

Opal Run's response reflects its misunderstanding of the purpose of infringement contentions. Opal Run cannot assert a new theory of infringement at this stage of the case, even where the new theory is directed to a different portion of the same website it has previously accused. Opal Run forges no connection between Loftsgard's report and Opal Run's infringement contentions, which present distinctly different theories. Further, Opal Run's explanation of why its expert report on damages was served late is inadequate. Opal Run should not be permitted to circumvent the local rules and schedule, and the Court should grant ONP's motion.

### I. Loftsgard's report contains a new infringement theory that accuses new features of ONP's website.

Opal Run's expert report on infringement identifies entirely new features, from a previously-unmentioned portion of ONP's website, as infringing asserted claim 10. Opal Run concedes that there are differences but claims that those differences are permissible because its infringement contentions consisted of "non-limiting" examples. (*See* Resp. at 4.) Thus, Opal Run asserts that it was free to change the features it accused at any time. Further, Opal Run argues that such changes do not alter its theory of infringement because Opal Run has always alleged that ONP's website infringes, and the new features to which Opal Run's expert points are also found on ONP's website. (*Id.*) If Opal Run were correct, a patentee could change its infringement theory at any time after serving infringement contentions as long as, at the highest level, the accused product remains the same. That cannot be the case.

Opal Run misunderstands the purpose of infringement contentions. As ONP explained in its motion, "infringement contentions must be reasonably precise and detailed based on all publicly available information in order to provide a defendant with adequate notice of the plaintiff's theories of infringement." *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009). "This notice focuses discovery and narrows issues for claim

2

construction, summary judgment, and trial." *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010). Opal Run's end-run around the local rules renders this notice meaningless in this case.

For example, Opal Run focuses on the fact that its infringement contentions and expert's report both generally accuse ONP's website of infringement. But ONP's website is merely the context of its alleged infringement. Opal Run was required to identify, based on all publicly-available information, those specific features of ONP's website that allegedly meet each element of asserted claim 10 and to explain how those features meet those elements. Now that claim construction and fact discovery are complete, Opal Run's expert points out entirely different components of ONP's website as meeting the elements of claim 10 and in entirely different ways. Opal Run's infringement contentions did not provide notice of this new theory.

*Orion IP, LLC v. Staples, Inc.* is inapposite. In *Orion*, the Court found that defendant "Toyota knew, or should have known, [] that Orion intended to accuse more than just the website's 'Model Selector' feature" because "Toyota had discovery disputes with Orion resulting from the parties' different understanding of the scope of Orion's PICs, yet Toyota did not seek clarification of Orion's PICs." *Orion*, 407 F. Supp. 2d 815, 817-818 (E.D. Tex. 2006). The Court therefore concluded that "[a] defendant cannot lay behind the log until late in the case and then claim it lacks notice as to the scope of the case or the infringement contentions," and that "the burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword." *Id*.

ONP did not lay behind any logs here—Opal Run did. ONP is using the burden of notice placed on Opal Run precisely as prescribed by the *Orion* Court: as a shield. ONP legitimately lacked notice of Opal Run's new theory until it was served Opal Run's expert's report. ONP urged Opal Run to supplement its infringement contentions, and while Opal Run did so, it never disclosed

the theory upon which its expert now relies. Further, ONP could not have inferred from discovery requests that a dispute existed regarding the scope of the infringement contentions because Opal Run did not serve any such requests or attempt to take almost any discovery.

Opal Run argues that its accusation of ONP's calendar product in its infringement contentions was merely an example of ONP's alleged infringement. (*See* Resp. at 4-5.) But Opal Run cannot justify asserting a new theory of infringement by characterizing the old one as an example. It would be one thing if ONP's website employed a common method to permit the creation of a variety of printed products, including calendars and business cards. Instead, as ONP explained in its motion, substantial differences exist between the different portions of its website. Consequently, even if Opal Run intended to use the calendar as an example, Opal Run's expert report presents a new theory because it differs significantly in ***how*** it claims ONP practices the claimed method. *See Orion*, 407 F. Supp. 2d at 817. ONP should not be required to defend against such a shifting-sands approach.

For example, Opal Run admits that, whereas its infringement contentions pointed only to an "instruction" that is "image-processing source code," its expert report points to an "instruction" that identifies "an image-processing program separate from the application program," called KRE8-3D (*See* Resp. at 9.) These are different versions of the Court's claim construction. In essence, Opal Run argues that because the Court's construction includes "options A, B, or C," its infringement contentions can focus on "option B" and then later its expert can focus on "option A" to satisfy the limitation. ONP is therefore expected to litigate against all three options under the Court's construction, even where Opal Run has identified only one as the infringing manner in which ONP's accused functionality operates. That is not proper notice; it is unduly prejudicial to ONP.

4

Moreover, Opal Run never mentioned KRE8-3D, the DaVinci module, or Opensoft before its expert's report. The "operation" allegedly performed by the source code identified in Opal Run's infringement contentions was reformatting, resizing, or removing an image from the template. KRE8-3D makes an image appear to have depth. KRE8-3D is therefore not implicated in the calendar "example" of Opal Run's infringement contentions because there is no option to preview the calendar in three dimensions. Thus, Opal Run's argument that the "Lofsgard Report references to KRE8-3d, DaVinci, and Opensoft provide [] a more detailed explanation of ONP's infringement" falls flat. (*Id*.) Rather than provide greater detail, the report identifies completely new functionality not used in the calendar portion of ONP's website.

Opal Run also admits that, whereas its infringement contentions alleged that the "data template" is HTML code comprising a calendar preview portion of a webpage, its expert report points to an XML file representing a business card design. (*Id*. at 7.) Despite also being a markup language, XML, unlike HTML, does not have predefined tags and therefore cannot be used by web browsers directly to display information as a webpage. That is, Opal Run identifies the "template" is HTML web page code in the contentions, and XML in the report (which is not web page code).

Relatedly, Opal Run argues that the distinction between the "application program" being a web browser on the client's computer and it being a host application on ONP's server "does not exist." (*Id*.) Presumably, this is because "Loftsgard never drew a distinction between markup languages interpreted by a web browser versus those interpreted with a JavaScript library." (*Id*. at 10.) However, Loftsgard need not recognize the distinction for it to exist. Moreover, Opal Run cannot avoid the discrepancy by now asserting that the host application "works in tandem with a user's web browser." (*Id*.)

Finally, in Opal Run's infringement contentions, the "graphical component" was a user-supplied image, but in its expert report, the "graphical component" is an image provided by ONP as part of the business card template. Opal Run argues that "whether the graphical component is user-supplied or built-in is irrelevant to Claim 10." (*Id*. at 8.) That is simply not true. For reasons explained in ONP's motion, the claimed "graphical component" must be provided (*e.g.*, uploaded) or selected by the user. To be clear, the "graphical component" may be a "canned graphic" (*e.g.*, clip art or a background image) selected by the user for inclusion in the template. The "graphical component" cannot, however, be inherent to the template. This dispute is precisely the type of issue that could have been avoided or at least addressed during claim construction had ONP been aware of Opal Run's latest infringement theory. But ONP did not have an opportunity to explore through discovery or address through claim construction this new theory of infringement. Thus, the only just sanction is to strike Opal Run's expert report on infringement in its entirety.

II. **Opal Run has no legitimate excuse for the untimely service of its damages expert report.**

Opal Run's explanation for its having served its expert report on damages late, even after ONP agreed to an extension, is inadequate. *See Wright v. State Farm Lloyds*, No. 4:15-cv-7, 2015 WL 12915594, at *2 (E.D. Tex. Oct. 5, 2015) ("The party's explanation for seeking relief from the schedule must demonstrate that it could not have met the deadline despite its diligence."). Opal Run fails to explain why the alleged miscommunication discovered on February 13 prevented it from serving its expert report on damages by the extended deadline of 5:00 PM CST on February 14. Opal Run simply missed the deadline, and now it asks the Court to ignore its untimely service, as if to say, "So what?" The Court should not permit such brazen disregard for the Court's schedule.

Dated: March 21, 2017

Respectfully submitted,

By: */s/ Neil J. McNabnay*
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Ricardo J. Bonilla
rbonilla@fr.com
Texas Bar No. 24082704
Vasiliy Mayer
mayer@fr.com
Texas Bar No. 24099901

**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX  75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

*Counsel for Defendant OvernightPrints, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 21, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Vasiliy Mayer*
Vasiliy Mayer