**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| OPAL RUN LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Case No. 2:16-cv-24-JRG-RSP |
| v. | § | LEAD CASE |
| | § | |
| C & A MARKETING, INC.., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

<u>**ORDER**</u>

Before the Court is the Motion to Strike filed by Defendant Overnightprints, Inc. ("ONP")
(Dkt. No. 113) (the "Motion"). The Motion is **GRANTED IN PART**.

ONP argues that Plaintiff Opal Run LLC's ("Opal Run") expert report on infringement
contains a completely different theory than that contained in Opal Run's infringement contentions.
Opal Run served its infringement contentions on ONP on April 18, 2016. *See* Ex. A (Prelim. ICs).
Based on publicly available source code, ONP asserted in its contentions that the data template
recited in asserted claim 10 is "a template for calendar creation written in a markup language."
(Dkt. No. 113-1 at 6 (initial contentions); Dkt. No. 113-2 at 6 (supplemental contentions)). ONP
contends that Opal Run's expert report on infringement does not elaborate or expound on Opal
Run's contentions concerning the calendar creation template. Rather, it argues, the report focuses
on a different section of ONP's website dedicated to business cards in a different markup language.
(Dkt. No. 113-5 at 9–12.) Using publicly available browser tools, Opal Run's expert opines that
the data template is an XML template fetched from the server via a client-side javascript function
call and parsed by a second client-side javascript function call. (Id. at 113-5 at 11–14.)

Opal Run argues that this is not a new theory of infringement, but rather is a "more technically detailed explanation of ONP's infringement of the '120 Patent." (Dkt. No. 121 at 1.) Specifically, it argues that its infringement contentions and the Loftsgard Report set forth a consistent infringement theory: "ONP's website generates data templates in markup languages that include instructions for operating on graphical components." (Id. at 121 at 5.)  Opal Run is wrong.

Markup languages tell the computer how software should process transmitted text by inserting "tags" around text. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 839–40 (Fed. Cir. 2010).  HTML and XML are both markup languages.  However, as this case illustrates, HTML and XML used differently.  HTML is a web publishing language.  It describes the layout of objects (such as text, image, video, etc.) in a browser. *See generally Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1314 (Fed. Cir. 2010); *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1340 (Fed. Cir. 2010) ("HTML is a language embodying sets of instructions that control the format of a Web page displayed on the browser application of a user's PC. HTML employs particular instructions, known as 'tags' to determine the appearance of a Web page.").   The browser parses HTML.  By contrast, XML is "a textual language that is used to describe data." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1354 (Fed. Cir. 2001); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 573 (E.D. Tex. 2009) *accord* Dkt. No. 113-5 (Loftsgard Report) at 14.  XML facilitates the communication of data structures and, unlike HTML, it is not read directly by the browser layout engine.

As the Loftsgard Report shows, the ONP website uses XML and HTML differently.  The accused website uses HTML (which has predefined tags) as most browsers do: to tell the browser layout engine how to arrange the visual elements on an ONP webpage.  The accused website uses XML to retrieve data.  Specifically, the client places a request to the server for an XML data

template "*that is subsequently used* to generate the personalized printed product." (Dkt. No. 113-5 at 11.)  First, it sends an XMLHttpRequest which asks ONP's server to provide an XML data structure.  *See Droplets, Inc. v. E*TRADE Fin. Corp.*, 2015 WL 1062670, at *12 (S.D.N.Y. Mar. 9, 2015).   Then, the server provides that data structure to the client, which is interpreted by javascript functions in the javascript file app.js, and then used by other software modules. (Id. at 10–12.) ("[T]he host application loads the data template from a remote server.").

The HTML code Opal Run identified in its opening contentions is fundamentally different from the XML code identified in the Loftgard report.  Opal Run's argument that ONP was put on notice because it stated that its contentions are directed toward "markup languages" is unpersuasive.  Within web publishing, its contention is simply too general to have any meaning.  By analogy, assume the claim was directed to print publishing and the accused product were a book.  Opal Run asks the Court to find that identifying the "product template" element as one paragraph in one chapter written in French puts an accused infringer on notice of a different paragraph in a different chapter written in Spanish as the claimed "product template" element, because its contentions are directed toward the use of Romance languages in the book.

*Orion IP LLC v. Staples, Inc.*, 407 F. Supp. 2d 815 (E.D. Tex. 2006) is quite distinguishable.  In that case, Orion accused Toyota's entire website.  As the Court remarked, "with something like a website, it would be unrealistic to expect plaintiffs to provide screen shots for every possible manifestation of the alleged infringement [so] plaintiffs should provide specific theories of infringement and representative examples of the alleged infringement so as to give defendants fair notice of infringement . . ." *Id.* at 817.  In this case, as discussed above, the example shown in Opal Run's contentions is in no way similar to or representative of the theory advanced in Dr. Loftgard's report.  Based on the record, it is clear that the XML and HTML code segments

work in fundamentally different ways on the accused website.  Opal Run is advancing a new infringement theory, not an example of an infringement theory previously disclosed, which was the case in *Orion*.

"When information is publicly available, the Patent Rules require plaintiffs to set forth specific theories of infringement at the outset of the case." *Orion IP, LLC*, 407 F. Supp. 2d at 817. None of the information Dr. Loftgard uses in his report was publicly unavailable, and in fact, it is all gleaned from accessing ONP's publicly facing website.  The Court also notes that Opal Run has propounded no discovery in this case beyond that which is required by the Discovery Order in this case.  With respect to Dr. Loftgard's report, the Motion is **GRANTED** and the Court **STRIKES** the portions of Opal Run's expert report on infringement that are directed to the new theory addressed above.

The Motion is **DENIED** with respect to Dr. Khoury's report, however.  ONP asks the Court to strike Opal Run's damages report because it was served hours late.  The Court declines to do so.  ONP has not suffered any prejudice.

**SIGNED this 14th day of May, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE